ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
_]jThis disciplinary matter arises from formal charges filed by the Office of Disci *479 plinary Counsel (“ODC”) against respondent, James K. Gaudet, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed three sets of formal charges against respondent. The first set, disciplinary board docket number 99-DB-107, was filed on October 22, 1999 and consists of two counts. The second set, disciplinary board docket number 00-DB-032, was filed on March 2, 2000 and consists of one count. The third set, disciplinary board docket number 02-DB-095, was filed on September 3, 2002 and consists of one count. The three sets of formal charges were considered by separate hearing committees, then consolidated by order of the disciplinary board. On April 26, 2005, the board filed in this court a single recommendation of discipline encompassing all three sets of formal charges.

99-DB-107

Counts I & II — Respondent’s Conduct as a Judicial Candidate
In early 1999, respondent was a candidate for a seat on the 24th Judicial District Court. During his campaign, respondent assisted in planning a continuing legal |2education program at a Mississippi hotel. In several conversations with the hotel staff, respondent misrepresented himself as a “judge” and “soon to be judge.” He also made lewd and inappropriate comments to the hotel staff.
Furthermore, during a political forum for judicial candidates, respondent was asked his views on imposing the death penalty, to which he commented, “I’ll press the needle in myself.” This remark was published in The Times-Picayune on February 24, 1999.
The ODC alleges respondent violated the following Rules of Professional Conduct: Rules 8.2(b) (lawyers who are judicial candidates shall comply with the Code of Judicial Conduct), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Furthermore, the ODC alleges respondent violated the following Canons of the Code of Judicial Conduct: Canons 7 B(1)(a) (a judicial candidate shall maintain the dignity appropriate to judicial office), 7 B(l)(d) (a judicial candidate shall not make pledges, promises, or commitments with respect to cases, controversies, or issues that are likely to come before the court, nor shall the candidate knowingly make a false statement concerning his identity, qualifications, present position, or other fact), and 7 G (lawyers who are unsuccessful judicial candidates are subject to lawyer discipline for campaign misconduct).[1]
Respondent answered the formal charges and generally denied any misconduct. The matter then proceeded to a formal hearing on the merits, which was conducted by the hearing committee on October 18, 2000. Following the hearing, the hearing committee issued its report, finding that respondent violated Rules 8.4(a) and 8.4(c) |sof the Rules of Professional Conduct, as well as Canons 7 B(1)(a), 7 B(1)(d), and 7 G of the Code of Judicial Conduct,[2] when he misrepresented *480 himself as a judge or soon-to-be judge. Furthermore, his lewd comments to the hotel staff did not maintain the dignity appropriate to judicial office. However, the ODC failed to prove by clear and convincing evidence that respondent violated Canon 7 B(l)(d) in his remark about the death penalty. Respondent’s comment may have been insensitive, but it cannot be read as a pledge or promise of conduct in office. According to the newspaper article, all of the candidates responded to the question, and the question was apparently posed in an abstract context not tied to any case, controversy, or issue.
In assessing an appropriate sanction, the committee found respondent conveyed false or misleading information and violated a duty owed to the profession. Furthermore, the committee found that although respondent’s misrepresentations were not directed toward a client, his negligent and intentional failure to provide accurate and complete information caused an intangible injury to the persons to whom they were directed, to the judiciary, and to the legal profession.
As aggravating factors, the committee found, among others, a refusal to acknowledge the wrongful nature of the conduct and substantial experience in the practice of law (admitted 1960). In mitigation, the committee found, among others, the absence of a prior disciplinary record. Additionally, respondent’s actions did not cause serious harm and do not reflect an inability to practice law.
Based on these findings, the committee recommended that respondent be publicly reprimanded. Respondent filed an objection to the hearing committee’s recommendation in 99-DB-107, seeking the dismissal of the formal charges.

1400-DB-0S2

The Lumpkin Matter

In August 1998, Denise Lumpkin retained respondent to file a civil suit arising out of personal injuries she received from a criminal act against her. Ms. Lumpkin signed a contingency fee contract for respondent’s services in the civil matter. Respondent did not represent Ms. Lump-kin in connection with the criminal case.
On October 29, 1998, respondent accompanied Ms. Lumpkin to a criminal hearing, which resulted in a criminal sentence for the tortfeasor that included $2,000 in criminal restitution to Ms. Lumpkin. That day, Ms. Lumpkin received a check for $1,000 of the victim’s restitution award, which she endorsed and gave to respondent to deposit. Respondent then wrote Ms. Lumpkin a check for $500, keeping $500 for himself. Despite her repeated requests, respondent did not provide Ms. Lumpkin with an explanation or accounting for these funds. In November 1998, respondent filed suit on behalf of Ms. Lumpkin. In February 1999, respondent attempted to collect the second $1,000 restitution payment from the district attorney’s office, but was unsuccessful.
On March 2, 1999, Ms. Lumpkin sent respondent a certified letter terminating his services. Respondent in turn informed opposing counsel in the civil matter to protect his fees. Thereafter, Ms. Lumpkin successfully negotiated a settlement in the civil matter for $6,800 without the assistance of counsel. In June 1999, Ms. Lumpkin filed a disciplinary complaint against respondent.
In July 1999, respondent filed a petition for intervention, which included a statement of his fees and costs as an attachment. Following an October 1999 hearing, *481 Judge Fredericka Wicker denied respondent’s petition, stating in oral reasons for judgment:
| sBased upon the law and testimony presented, Mr. Gaudet was not entitled to the five-hundred ($500.00) dollars he took from Mrs. Lumpkin’s receipt of one thousand ($1000.00) dollars in criminal restitution.... Furthermore, Mr. Gau-det’s behavior with regard to the one thousand ($1000.00) dollar check ... was far outside the appropriate behavior of an attorney-at-law. Moreover, Mr. Gau-det failed to provide Ms. Lumpkin with an accounting for either the five hundred ($500.00) dollars he took from her or the additional money he sought pursuant to the second disbursal of criminal restitution funds.
The testimony of Mr. David Cambre, the insurance defense attorney involved in the ... civil case, indicates that Mr. Gaudet’s behavior for the approximate seven months he represented Ms. Lumpkin was disruptive, unprofessional, garrulous and not calculated to properly pursue a prompt and proper resolution of Ms. Lumpkin’s case.
[[Image here]]
Finally, Mr. Gaudet was uncommunicative with his client and displayed an unprofessional social demeanor towards Ms. Lumpkin in his representation of her and during court appearances he made on her behalf. Mrs. Lumpkin’s statements regarding Mr. Gaudet’s comments of a sexual nature were unrebut-ted.
Furthermore, Mr. Gaudet’s aggressive and unprofessional demeanor on the witness stand at the trial of his Petition for Intervention wholly corroborates the testimony of both Mr. Cambre and Mrs. Lumpkin regarding the manner in which Mr. Gaudet handled Mrs. Lumpkin’s case.
Accordingly, the Court finds that Mrs. Lumpkin discharged Mr. Gaudet as her counsel for just cause.
Respondent was also ordered to return to Ms. Lumpkin $298 of the $500 he had kept from her criminal restitution.[3] He did not make restitution to Ms. Lumpkin until August 2001, nearly two years later.
The ODC alleges respondent violated the following Rules of Professional Conduct: Rules 1.2(a) (scope of the representation), 1.3 (failure to act with reasonable | ^diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(a)(b)(c) (fee arrangements), 1.7(b) (a lawyer shall not represent a client if the representation may be materially limited by the lawyer’s own interests), 1.15(b) (safekeeping property of clients or third parties), 1.16(d) (obligations upon termination of the representation), 3.3(a)(b) (candor toward the tribunal), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.3(a) (failure to report professional misconduct), 8.4(a), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(e) (stating or implying an ability to influence improperly a judge, judicial officer, governmental agency, or official).
Respondent answered the formal charges and generally denied any misconduct. The matter then proceeded to a formal hearing on the merits, which was conducted by the hearing committee on September 18, 2000. Following the hearing, the hearing committee issued its re *482 port, finding that the ODC failed to prove by clear and convincing evidence that respondent violated Rules 1.2(a), 1.3, 1.4, 1.5(a)(b)(c), 1.7(b), 8.1(c), and 8.4(b)(d)(e). However, the committee found clear and convincing evidence of violations of Rules 1.15(b), 1.16(d), 3.3(a)(b), 8.3(a), and 8.4(a)(c). By retaining $500 from the first criminal restitution check, respondent failed to deliver funds to which Ms. Lump-kin was entitled. He further failed to render an accounting after he retained the funds, and failed to refund the $298 ordered by the court. Furthermore, the committee determined that respondent made false statements of material fact to a tribunal during the intervention hearing. Finally, respondent failed to report his own misconduct. According to the ABA’s Standards for Imposing Lawyer Sanctions, suspension is the baseline sanction, although disbarment or reprimand may also be appropriate in some circumstances.
The committee found the following aggravating factors: multiple rule violations, dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and indifference to making restitution. In mitigation, the committee found an absence of a prior disciplinary record.
Based on these findings, the committee recommended that respondent be suspended for six months, with three months deferred if he makes restitution to Ms. Lumpkin. Both the ODC and respondent objected to the hearing committee’s recommendation in 00-DB-032.

02-DB-095

The Overton Matter

In October 1997, William Overton retained respondent to handle a civil claim against his employer. Respondent filed a petition on behalf of his client first in United States District Court, which was dismissed for lack of subject matter jurisdiction, then in Civil District Court for the Parish of Orleans. Respondent also represented Mr. Overton as a potential witness for the federal government concerning environmental violations by his employer. On April 25, 2000, Mr. Overton paid respondent $2,000. On June 14, 2000, respondent terminated his representation of Mr. Overton in all matters. On July 7, 2000, Mr. Overton requested that respondent return his entire file. Respondent failed to do so. He also failed to provide Mr. Overton with an accounting for the $2,000 payment and failed to cooperate with Mr. Overton’s new attorney in substituting counsel of record.
Mr. Overton filed a disciplinary complaint against respondent on July 19, 2000. Respondent did not return Mr. Overton’s requested file materials until May 29, 2001 and did not provide an accounting until November 2002.
IsThe ODC alleges respondent violated the following Rules of Professional Conduct: Rules 1.3, 1.4, 1.15(b), 1.16(d), 8.4(a), 8.4(c), and 8.4(d).
Respondent answered the formal charges and generally denied any misconduct. The matter was set for a formal hearing on the merits, but on joint motion of the parties, the hearing committee considered only written arguments, which were limited to the issues of mitigation and whether respondent failed to provide an accounting to his client. In his submission, respondent asserted that the $2,000 payment was for services already rendered and not for future services. At the time of the payment, respondent explained this to Mr. Overton, who made no complaint regarding services already rendered, did not question the charges, and did not request a written accounting. Respondent further asserted that while he did not provide a *483 written accounting to Mr. Overton at the termination of his services, he gave his client a verbal accounting throughout the representation. A written accounting was provided to Mr. Overton in November 2002.
In its submission, the ODC pointed out that respondent received $2,000 from Mr. Overton on April 25, 2000 and terminated his representation on June 14, 2000. However, respondent did not provide Mr. Over-ton with the requested accounting until after formal charges were filed. As such, the ODC argued that respondent violated Rules 1.15(b) and 8.4(a) of the Rules of Professional Conduct.
The hearing committee determined that respondent violated Rules 1.15(b) and 8.4(a) of the Rules of Professional Conduct.[4] Respondent failed to promptly render a full accounting to show if his client was due a refund when he terminated his representation in June 2000. Nor did he produce a bill or other written documentation when Mr. Overton paid him $2,000 in April 2000. Clearly, Mr. Overton had no 1 ¡¡understanding of the application of the $2,000 payment, evidenced by his repeated requests for information, yet respondent did not provide Mr. Overton and the ODC with a written accounting until November 2002.
The committee determined that respondent acted knowingly. In aggravation, the committee found prior disciplinary offenses (2001 admonition for inappropriate communications with a person represented by counsel) and substantial experience in the practice of law. In mitigation, the committee found full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings. The committee also recognized respondent has suffered from personal and emotional problems but did not weigh them in determining the appropriate discipline.
Further considering the ABA’s Standards for Imposing Lawyer Sanctions and this court’s prior jurisprudence, the committee recommended respondent be suspended for three months, fully deferred. Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation in 02-DB-095.

Disciplinary Board Recommendation

99-DB-107, 00-DB-032, & 02-DB-095

The disciplinary board determined that the hearing committees’ factual findings were not manifestly erroneous and adopted same. In 97-DB-107, the board found that respondent’s conduct in Count I violated Canons 7 B(1)(a), 7 B(l)(d), and 7 G of the Code of Judicial Conduct and Rules 8.2(b), 8.4(a), and 8.4(c) of the Rules of Professional Conduct. However the board found that Canon 7 B(l)(d) was not violated by respondent’s conduct in Count II. With respect to 00-DB-032, the board found that respondent did not violate Rules 1.2(a), 1.3, 1.4, 1.5(a)(b)(c), 1.7(b), 8.1(c), 8.3(a), and 8.4(b)(d)(e). However, the board found that respondent did violate Rules 1.15(b), 1.16(d), 3.3, 8.4(a), and 8.4(c). In 02-DB-095, the board found that | ^respondent violated Rules 1.15(b) and 8.4(a) but dismissed the other allegations because the ODC did not pursue same.
The board determined that respondent knowingly violated duties owed to his clients, the public, and as a professional. His conduct harmed Ms. Lumpkin and, while there was no actual harm to Mr. Overton, the grossly delayed accounting defies explanation and reasonable delays.
*484 Relying on the AJBA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is suspension. As aggravating factors, the board recognized prior disciplinary offenses, dishonest or selfish motive, multiple rule violations, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law, and indifference to making restitution. In mitigation, the board recognized full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, personal or emotional problems, and physical illness.
Further considering this court’s prior jurisprudence, the board determined that a period of actual suspension is appropriate. Accordingly, the board recommended respondent be suspended for six months, with three months deferred, followed by six months of probation and Ethics School.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has Inbeen proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record of the consolidated matters supports the following findings:

99-DB-107

In Count I, respondent violated Rules 8.2(b), 8.4(a), and 8.4(c) of the Rules of Professional Conduct. Canons 7 B(l)(a), 7 B(l)(d), and 7 G of the Code of Judicial Conduct were also violated. Respondent misrepresented himself as a judge or soon-to-be judge and made lewd, suggestive remarks to third persons.
In Count II, respondent testified that his death penalty comment was taken out of context and was intended as a personal, not judicial, opinion. Furthermore, he asserted all candidates responded to the same question, which appears to be supported by the newspaper article. The ODC produced no evidence to contradict respondent. As such, there is not clear and convincing evidence of violations of either the Rules of Professional Conduct or the Code of Judicial Conduct in connection with this count.

00-DB-082

In this matter, respondent violated Rules 1.2(a), 1.4, 1.5(b), 1.15(b), 1.16(d), 3.3(a)(b), 8.4(a), and 8.4(c) of the Rules of Professional Conduct. He expanded the scope of the representation without Ms. Lumpkin’s authority by inserting himself into the criminal matter. Thereafter, he failed to communicate his fee arrangement to Ms. |12Lumpkin in writing or even explain his hourly rate. He failed to provide adequate status reports to Ms. Lumpkin and did not provide his client with an accounting of the $500 he kept from the criminal restitution check. He also failed to return the unearned fee as ordered by Judge Wicker.

*485
02-DB-095

In this matter, respondent violated Rules 1.15(b) and 8.4(a) of the Rules of Professional Conduct when he failed to provide Mr. Overton with an accounting of the $2,000 payment.[5]

Discipline

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
By acting as he did in the above three matters, respondent knowingly, if not intentionally, violated duties owed to his clients, the legal system, and as a professional. His conduct caused actual harm to Ms. Lumpkin by depriving her of her funds for an extended period of time. Respondent’s conduct also caused harm to |13the profession and had the potential to cause actual harm to Mr. Overton. The baseline sanction for such misconduct is a period of suspension.
The following aggravating factors are supported by the record: prior disciplinary offenses, dishonest or selfish motive, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law. The mitigating factors present are personal or emotional problems and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings.
Under these circumstances, we find the sanction recommended by the disciplinary board is appropriate. Accordingly, we will suspend respondent from the practice of law for a period of six months. We will defer three months of the suspension and place respondent on unsupervised probation for a period of six months, during which time he must successfully complete the Louisiana State Bar Association’s Ethics School program. Any failure of respondent to comply with this condition, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension execu-tory, or imposing additional discipline, as appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that James K. Gaudet, Louisiana Bar Roll number 5970, be suspended from the practice of law for six months. Three months of this suspension shall be deferred. Following the completion of the active portion of his suspension, respondent shall be placed on unsupervised probation for a period of six months, during which time he must successfully complete the Louisiana State Bar Association’s Ethics School |14program. Any failure of respondent to comply with this condition, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension execu-tory, or imposing additional discipline, as *486 appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
WEIMER, J., concurs in part and dissents in part and assigns reasons.
TRAYLOR, J., dissents and assigns reasons.

 Retired Judge Philip C. Ciaccio, assigned as Justice pro tempore, sitting for Associate Justice Catherine D. Kimball.

. Respondent’s misconduct was first investigated by the Judiciary Commission of Louisiana, but when respondent was not elected to judicial office, the Commission lost jurisdiction. We approved the Commission’s request to submit the file to the ODC for further investigation.

. The committee failed to find a violation of Rule 8.2(b), but in light of its finding of a *480 violation of Canon 7 G, this appears to be an oversight.

. Respondent was only required to return $298 because he had paid the $202 filing fee for Ms. Lumpkin's civil suit out of his own pocket.

. The committee did not consider the other allegations of the formal charges in light of the joint motion to limit the hearing to the issue of whether respondent failed to provide an accounting.

. Because the parties agreed to limit this matter to the issue of a failure to provide an accounting, we will not consider the other allegations in the formal charges.